# In the United States Court of Federal Claims

No. 20-1469C
(Filed: March 18, 2022)
**FOR PUBLICATION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CRAIG M. STRAHLER, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Jason Ellis Perry*, Law Office of Jason Perry, LLC, Wellington, FL, for Plaintiff.

*Kyle S. Beckrich*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, United States. With him on briefs were *Brian M. Boynton*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, *Martin F. Hockey*, *Jr.*, Acting Director, *Eric P. Bruskin*, Assistant Director, as well as *Lt. Col. Jahn Olson*, United States Marine Corps, Office of the Judge Advocate General.

## OPINION AND ORDER

Plaintiff Craig M. Strahler, a former rifleman in the U.S. Marine Corps, challenges a decision of the Board for Correction of Naval Records ("BCNR" or "Board") denying his request for medical retirement. Mr. Strahler also seeks combat-related special compensation ("CRSC"). The parties filed cross-motions for judgment on the administrative record under RCFC 52.1(c).[1] The parties filed supplemental briefs on jurisdiction at the Court's request,[2] and the Court held oral argument on all issues.[3] The matter is now ripe for disposition.

This Court has jurisdiction over Mr. Strahler's claim. However, substantial evidence supports the BCNR's finding that he was fit for continued service when he

---

[1] Def.'s Mot. for J. on the Administrative R. (ECF 16) ("Def.'s MJAR"); Pl.'s Cross-Mot. for J. on the Administrative R. & Opp. (ECF 21) ("Pl.'s MJAR"); Def.'s Resp. & Reply (ECF 30) ("Def.'s R&R"); Pl.'s Reply (ECF 33).

[2] Def.'s Suppl. Br. (ECF 35); Pl.'s Suppl. Br. (ECF 36); Def.'s Suppl. Resp. (ECF 37); Pl.'s Suppl. Resp. (ECF 38); *see* Order (ECF 34) (requesting supplemental briefs).

[3] Tr. of Oral Arg. (ECF 40).

was discharged from active duty. Accordingly, the Court **GRANTS** Defendant's motion and **DENIES** Mr. Strahler's cross-motion. The case is **DISMISSED**.

## BACKGROUND

## I.   The Disability Retirement Process

A military service member may receive disability retirement if the secretary of his branch finds that he is "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay," and also that:

> (1) based upon accepted medical principles, the disability is of a permanent nature and stable;
>
> (2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and
>
> (3) [*inter alia*]—
>
> > …
> >
> > (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs [("VA")] at the time of the determination; and …
> >
> > > (iv) the disability was incurred in line of duty after September 14, 1978.

10 U.S.C. § 1201(a)–(b); *see also* 10 U.S.C. § 101(a)(9).

Under Department of Defense ("DoD") regulations, a service member will be considered unfit "when the evidence establishes that the member, due to physical disability, is unable to reasonably perform the duties of his or her office, grade, rank, or rating (hereafter called duties) to include duties during a remaining period of Reserve obligation." *See* Department of Defense Instruction ("DoDI") 1332.38, E3.P3.2 (Nov. 14, 1996); *see also* Secretary of the Navy Instruction ("SECNAVINST") 1850.4E encl. 3, § 3301 (Apr. 30, 2002) ("The sole standard to be used in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay."). Fitness to separate from the military is evaluated by the same standard as fitness for duty. Department of the Navy, Manual of the Medical Department ("MANMED") Art. 15-29(1) (Dec. 14, 2001).

Because the Navy is not equipped to provide "prolonged, definitive medical care" for service members with injuries compromising their ability to serve, personnel in various administrative and medical roles — including "line commanders, commanding officers of MTFs [medical treatment facilities] and individual medical and dental officers" — are charged with promptly identifying those individuals "whose physical or mental fitness to continue naval service is questionable." SECNAVINST 1850.4E encl. 1, § 1005; DoDI 1332.38, E3.P1.6.1; DoD 6015.1–M, P13.1.58 (Jan. 3, 1999) (defining medical treatment facility as a "military facility established for the purpose of furnishing medical and/or dental care to eligible individuals"). Members meeting certain diagnostic criteria are processed through the Disability Evaluation System ("DES"). *See* DoDI 1332.38, E3.P2.1, E3.P7.1.2; *see also* SECNAVINST 1850.4E encl. 8, § 8001(a). The DES process begins with a medical evaluation board ("MEB"), *see* DoDI 1332.38, E3.P1.1.1; SECNAVINST 1850.4E encl. 3, § 3102(a), followed if necessary by a physical evaluation board ("PEB"), *see* DoDI 1332.38, E3.P1.1.2; SECNAVINST 1850.4E encl. 3, § 3102(c), which makes a determination of disability "on behalf of the Secretary of the Navy[.]" SECNAVINST 1850.4E encl. 1, § 1004(a).

If a member's condition is such that he "can be restored to full military duty within a reasonable period of time" (*i.e.*, "16 months or less"), the member may be placed on temporary limited duty for the time he needs to recover. SECNAVINST 1850.4E encl. 1, § 1008(b); *see* MANMED Art. 18-29 (Sep. 10, 1993). For Marine Corps members, temporary limited duty up to eight months can be granted solely by a medical treatment facility, without approval by the Commandant of the Marine Corps. SECNAVINST 1850.4E encl. 1, § 1008(b)(2)(a)(1).

At the time relevant to this case, if the member recovered before his temporary limited duty ended, his physician could return him to full duty. *See* MANMED Art. 18-29(3)(f). The physician was required to document a reasonably detailed report of the member's condition, including "findings, prognosis, and any residual effects that may be apparent." *Id*. "A note stating 'Fit for Full Duty' [was] not sufficient." *Id*. The physician was also required to counsel the member on his medical findings. *Id*. But if a member was deemed unlikely to return to full duty and had obtained optimal medical treatment, he would be referred to the DES. SECNAVINST 1850.4E encl. 1, § 1009(a). A revision to those procedures, effective January 10, 2005, added a requirement that the physician obtain the approval of the convening authority or his designee before returning a member to full duty. *See* MANMED Art. 18-10(11)(a) (Jan. 10, 2005). A "convening authority" is an officer with authority to convene a medical board. MANMED Art. 18-3(1) (describing the convening authority's

responsibilities with respect to the medical boards). But that requirement was not in effect when the events underlying this case occurred.

Separate from military disability retirement benefits, a veteran may obtain CRSC under 10 U.S.C. § 1413a. A member is entitled to CRSC when he "(1) is entitled to retired pay (other than by reason of section 12731b of this title); and (2) has a combat-related disability." 10 U.S.C. § 1413a(c)(1); *see also* 10 U.S.C. § 1413a(e) (defining "combat-related disability").

A member of the Navy who believes he was erroneously denied disability retirement or CRSC may petition the BCNR for correction of his military record. *See Chambers v. United States*, 417 F.3d 1218, 1222 (Fed. Cir. 2005) (discussing the BCNR's Army counterpart); *Porter v. United States*, 131 Fed. Cl. 552, 559 (2017). The BCNR grants relief upon finding an error or injustice. 10 U.S.C. § 1552(a)(1). The BCNR may also "make a disability determination in the first instance." *Sawyer v. United States*, 930 F.2d 1577, 1581 (Fed. Cir. 1991); *O'Hare v. United States*, 155 Fed. Cl. 364, 378 (2021). Members who are dissatisfied with the decision of the BCNR may obtain judicial review. *Chambers*, 417 F.3d at 1224–25.

## II. Facts

Mr. Strahler is a former sergeant in the U.S. Marine Corps. Administrative Record ("AR") 20. In late 2001 and early 2002, he was deployed to Afghanistan, where, among other decorations, he received a Combat Action Ribbon. AR 20, 190. His active service was scheduled to end on July 7, 2002. AR 20.

Upon his return from Afghanistan, he self-reported several debilitating physical ailments. AR 1019, 1021. On April 24, 2002 — less than three months before the end of his enlistment — Mr. Strahler was placed on temporary limited duty for eight months by Dr. R.T. VanHook, Assistant Battalion Surgeon of Naval Hospital Camp Lejeune in North Carolina. AR 37. Dr. VanHook prepared a treatment plan for Mr. Strahler that involved referrals to specialists, diagnostic tests, and restrictions on strenuous activity. AR 37, 841.

During a check-up appointment early that summer, Dr. VanHook recorded updates on six physical complaints previously reported by Mr. Strahler: dyspepsia, breathing problems, hemorrhoids, shoulder pain, lower back pain, and chest pain with shortness of breath. AR 458. According to Dr. VanHook's notes, Plaintiff disclaimed most symptoms either to specialists or to Dr. VanHook directly. *Id.* Mr. Strahler's evaluations were normal, except for a spine MRI that showed an L4/5 and L5/S1 disc bulge with L5 and S1 nerve root impingement. AR 754–56. Dr. VanHook addressed Mr. Strahler's lower back pain as follows:

- 4 -

> Completed back school. Continues to deny problems since returning
> from deployment. MRI reveals posterior disc bulge at L4/5 w/ L5 and S1
> nerve root impingement in the right lateral recess. [Patient] has NEVER
> [complained of symptoms] that were [consistent with] radiculopathy,[4]
> and the pain he describes has always been [consistent with] mechanical
> LBP/lumbar strain/lumbar spasm.

AR 458. In short, Dr. VanHook summed up, "[a]ll labs and radiological studies have
been normal (except for the MRI which is NOT [consistent with] his [complaints])."
*Id.*

Dr. VanHook concluded on that basis that Mr. Strahler's reported ailments
represented "malingering for the secondary gain of disability benefits." *Id.* He wrote
that he had originally suspected malingering because Mr. Strahler was "extremely
paranoid and interested more in medico-legal issues than his health," AR 457, but
that he "had not previously documented this suspicion in order to withhold it from"
Mr. Strahler. AR 458. Instead, he had used the eight-month temporary limited duty
"as a diagnostic tool to confirm [Mr. Strahler's] malingering while simultaneously
treating any legitimate medical conditions." *Id.* "All complaints vanished instantly as
soon as [Mr. Strahler] realized that they would delay his separation," Dr. VanHook
wrote, and Mr. Strahler "threatened litigation and congressional investigation if [Dr.
VanHook] held him on active duty." *Id.* Considering his suspicions confirmed, Dr.
VanHook "formally chang[ed] his diagnosis to malingering" and found Mr. Strahler
"fit for duty and fit for separation." *Id.* Dr. VanHook appears to have inserted a
typewritten addendum and made manual cross-outs of diagnoses he had previously
recorded. AR 455–58; 763.

On July 7, 2002, Mr. Strahler was honorably discharged from active duty. AR
20. His reentry code was RE-1A, AR 20, meaning he was "[e]ligible for reenlistment."
Department of the Navy, Bureau of Personnel Instruction 1900.8D encl. 2 (Aug. 27,
2018). Mr. Strahler signed a document titled "FINAL DISPOSITION" affirming that
he was found "fit for full duty" on June 3, 2002. AR 38.

Mr. Strahler also signed a "Report of Medical Examination" containing an
acknowledgment that individuals found fit for separation do not receive DES
processing:

> You are being examined because of your separation from active duty. If
> you feel you have a serious defect or condition that interferes, or has

---

[4] One case has described radiculopathy as a "disease of the nerve roots, such as from inflammation or
impingement by a tumor or a bony spur." *Krusemark. v. Sec'y of HHS*, No. 16-1593V, 2021 WL
6774576, at *5 n. 23 (quoting *Dorland's Medical Dictionary Online*).

interfered, with the performance of your military duties, advise the examiner. If you are considered by the examiner to be not physically qualified for separation, you will be referred for further evaluation, and if indicated, appearance before a medical board. If, however, you are found physically qualified for separation, any defect will be recorded[.] … Such defects, while not considered disqualifying for military service, may entitle you to certain benefits from the [VA].[5]

AR 454. But his signature is not dated, the date at the top of the form appears to have been altered, AR 453, and diagnoses on the form other than malingering have been struck out, AR 455, making it unclear when Mr. Strahler signed the form or what it said at the time.

Mr. Strahler was assigned to the Individual Ready Reserve ("IRR") as an inactive member.[6] AR 24; DoDI 1235.13, 3.2 (Nov. 19, 1997). In early 2003, Mr. Strahler was recalled to active duty for service in Iraq. Compl. ¶ 22 (ECF 1). But meanwhile, the Commanding General of the Marine Corps Reserve Support Command submitted Mr. Strahler's medical documents to the Chief of the Bureau of Medicine and Surgery with a recommendation that Mr. Strahler be discharged. AR 24. In May 2003, Mr. Strahler was diagnosed with L4/5 and L5-S1 disc herniation and underwent surgery for a herniated disk at the University Hospitals of Cleveland. AR 412, 415. Later that month, Mr. Strahler was found not physically qualified for retention because of back pain. AR 23, 25. He was honorably discharged from the IRR on July 11, 2003. AR 22.

By 2017, Mr. Strahler began receiving VA disability compensation for various service-related conditions.[7] AR 547–49. Among other conditions, the VA rated him as 40 percent disabled for "osteoarthritis, lumbar spine with posterior L4-S1 disc bulge," AR 548, 10 percent for "left lower sciatic nerve radiculopathy," AR 549, 20 percent for "posterior L4-S1 disc bulge with radiculopathy right lower extremity," *id.*, and 50 percent for depressive disorder, *id.*

---

[5] Mr. Strahler's signature on this page additionally affirmed that he was "informed [of] and underst[ood] the provisions of article 15-29 [Separation from Active Duty] of the [MANMED]." AR 454.
[6] The IRR provides the Nation with a pool of manpower available for active duty in times of conflict. Unless called to serve in war or national emergency, members have limited administrative and training obligations. *See* 10 U.S.C. §§ 10102, 10141.
[7] Plaintiff states, without any citation to the record, that Mr. Strahler's "first award of VA disability compensation came in 2008." Pl.'s MJAR at 15. The record contains a document of Plaintiff's rated disabilities as of Aug. 15, 2017. AR 547.

III.   **Procedural History**

On June 9, 2015, Mr. Strahler submitted three separate applications for a Purple Heart to the BCNR: first, based on a back injury, AR 88; second, for exposure to chemical and biological agents, AR 139; and third, for injuries stemming from the blast of an improvised explosive device, AR 283. In the first application, Plaintiff described being struck by enemy militants while carrying a gear load of over 200 pounds. AR 88. Mr. Strahler claimed he was denied adequate treatment in Afghanistan, and that his "medical and field records [were] erased[.]" *Id*. In a statement accompanying his application, Mr. Strahler added that the incident left him "in debilitating pains[,]" with "ruptured and herniated discs in my lower back." AR 90.

The BCNR first denied Plaintiff's request for relief on February 1, 2016.  AR 1021–22. The decision construed the application for a Purple Heart as a request for medical retirement. AR 1021. But the Board found Dr. VanHook's diagnosis of malingering to be "credible" based on the sequence of events triggering Plaintiff's removal from limited duty, concluding that Mr. Strahler properly bore the consequences of "orchestrat[ing] [his] removal from limited duty in order to be discharged at [the] end of [his] obligated active service." AR 1022. In the Board's view, because Plaintiff failed to demonstrate evidence of disabilities prior to discharge, any evidence of administrative errors connected to his discharge was "not probative to the Board's decision." *Id*. The BCNR further dismissed as irrelevant a VA diagnosis for "service-connected disability conditions," reasoning that he was found "fit for duty prior to … discharge and issued a re-entry code that allowed [him] to re-enlist immediately." *Id*.

Mr. Strahler filed additional applications with the BCNR in 2017, AR 470, and 2018, AR 914, both of which added requests for medical retirement and CRSC and elaborated on Mr. Strahler's previous arguments. The BCNR denied those applications in terms similar to its 2016 decision. AR 1016, 1126. In particular, the BCNR acknowledged the VA disability rating, but concluded that "[t]he fact that you have been subsequently diagnosed with conditions post-service, or that any of your conditions may have worsened over time, did not convince the Board that you were unfit for continued service at the time of your discharge on 7 July 2002." AR 1017. Because the BCNR found Mr. Strahler was not eligible for retired pay, it denied his claims for CRSC. AR 1018, 1128.

## DISCUSSION

### I. Jurisdiction

To reach the merits of the case, I must first determine that the Court has jurisdiction over Mr. Strahler's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). I conclude that jurisdiction exists.

Mr. Strahler's claims fall within this Court's Tucker Act jurisdiction. *See* 28 U.S.C. § 1491(a)(1). The Tucker Act does not create a substantive right of action, *United States v. Testan*, 424 U.S. 392, 398 (1976), so a party seeking to bring a Tucker Act suit in this Court must point to a money-mandating statute or regulation. *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983). Mr. Strahler's claims for medical retirement arise under 10 U.S.C. § 1201, which is a money-mandating statute. *See Fisher v. United States*, 402 F.3d 1167, 1174 (Fed. Cir. 2005) (citing *Sawyer*, 930 F.2d 1577). His claims for CRSC arise under 10 U.S.C. § 1413a, which has been held to be money-mandating as well. *Adams v. United States*, 126 Fed. Cl. 645, 656 (2016), *aff'd*, 696 F. App'x 511 (Fed. Cir. 2017). As the allegedly aggrieved party, Mr. Strahler has standing to bring those claims.

Whether Mr. Strahler's claims are timely is a harder question. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132–34 (2008) (explaining that "the special statute of limitations governing the Court of Federal Claims" is jurisdictional, requiring *sua sponte* consideration). All claims before this Court are barred if filed more than six years after the claim first accrues. 28 U.S.C. § 2501.

The six-year statute of limitations on a disability pay case usually runs from "[t]he decision by the first statutorily authorized board that hears or refuses to hear the claim[.]" *Chambers*, 417 F.3d at 1224; *see Friedman v. United States*, 310 F.2d 381, 395–96 (Ct. Cl. 1962); 28 U.S.C. § 2501.[8] But there is an exception when "the veteran's knowledge of the existence and extent of his condition at the time of his discharge [is] sufficient to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to his discharge." *Chambers*, 417 F.3d at 1226 (quoting *Real v. United States*, 906 F.2d 1557, 1562 (Fed. Cir. 1990)). In that circumstance — where the service member knew, "at the time of his separation" from the military, "that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was

---

[8] PEBs and boards for correction of military records (like the BCNR) are statutorily authorized boards. *Patterson v. United States*, 154 Fed. Cl. 120, 125–26 (2021); *Quesada v. United States*, 136 Fed. Cl. 635, 643 (2018) (citing *Chambers*, 417 F.3d at 1225 & n.2).

service-connected," *id.* at 1226; *see* 10 U.S.C. § 1201(a)–(b)[9] — the statute of limitations runs from the time of discharge.

Because Mr. Strahler was discharged without a PEB, the first statutorily authorized board to address his arguments was the BCNR. But if the *Chambers* exception applies here, Mr. Strahler's claim is untimely.

The record, however, does not reflect that at the time of his discharge, Mr. Strahler had knowledge regarding his own condition sufficient to start the limitations period. Mr. Strahler presumably would have been aware of whatever physical limitations he had. But it is less evident that he *knew* his conditions were *permanent* disabilities. *See Chambers*, 417 F.3d at 1226. The record suggests that his medical evaluation was in flux at the time of discharge. *See id.* at 1226–27; *Real*, 906 F.2d at 1563. His spine diagnosis, for example, appears to have changed between his original MRI, *see* AR 755 (diagnosing a *bulging* disc), and the 2003 surgery that preceded his discharge from the IRR, *see* AR 415 (diagnosing a *herniated* disc). The 2003 diagnosis appears to have been new information developed *after* Mr. Strahler's 2002 discharge, and so does not shed light on what he knew at the time of discharge. The record does not show that the 2002 diagnosis of a bulging disc made Mr. Strahler aware of a permanent disability.

There is also evidence that Mr. Strahler did *not* know he was permanently disabled. Dr. VanHook had assigned him to temporary limited duty and treatment by specialists, and Mr. Strahler joined the IRR promptly after discharge from active duty. A likely inference, assuming Mr. Strahler actually suffered from the symptoms and conditions mentioned in Dr. VanHook's original notes, is that Mr. Strahler had reason to believe he was at least treatable. *Real*, 906 F.2d at 1563; *see also Johnson v. United States*, 123 Fed. Cl. 174, 179 (2015) (finding no statute of limitations accrual where plaintiff "never stopped" performing his duties and only had "temporary" medical restrictions), *aff'd*, 675 F. App'x 1011 (Fed. Cir. 2017).

Lack of evidence that Mr. Strahler knew "that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected" is sufficient to hold that the statute of limitations did not begin to run at the time of discharge. *Chambers*, 417 F.3d at 1226. But even if more were required, it is also unclear whether he knowingly waived his right to medical board review. *Id.* Although Mr. Strahler acknowledged that he had

---

[9] Defendant suggests that Mr. Strahler's claims are untimely because his "alleged medical conditions are physical in nature and traceable back to specific events that occurred while Mr. Strahler was deployed to Afghanistan," and because "Mr. Strahler was given the opportunity to tell his physician about any condition he believed he was suffering, and chose not to." Def.'s Suppl. Br. at 6. That argument is not consistent with the *Chambers* test.

been found fit for duty, AR 38, and signed a form waiving a PEB, AR 454, alterations and omissions in his medical records leave doubt about what the waiver form said when he signed it. AR 453–55; *see Chambers*, 417 F.3d at 1225 n.3 (discussing *Huffaker v. United States*, 2 Cl. Ct. 662 (1983)).

The statute of limitations thus began to run no earlier than February 1, 2016, when the BCNR issued its first decision. AR 1021–22. The case was filed on October 27, 2020, less than six years later. Mr. Strahler's claims are not time-barred.[10]

## II. Merits

Mr. Strahler's claims for medical retirement fall in two categories: substantive arguments that he was medically unfit for duty at the time of discharge, and procedural arguments about how his conditions and eventual discharge were managed. I address those issues in turn.[11]

### A. Legal Standard

When resolving motions for judgment on the administrative record under RCFC 52.1(c), this Court proceeds "as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005) (addressing former RCFC 56.1); *see also Young v. United States*, 497 F. App'x 53, 58–59 (Fed. Cir. 2012). The Court reviews decisions of military records correction boards under the standards of the Administrative Procedure Act. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009); *see* 5 U.S.C. § 706. That requires evaluating whether the BCNR's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006) (quoting *Porter v. United States,* 163 F.3d 1304, 1312 (Fed. Cir. 1998) (itself citing *Skinner v. United States,* 219 Ct. Cl. 322, 594 F.2d 824 (1979))).

Especially when it comes to fitness for military service — which is not a "judicial province," *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) — the standard of review is narrow. This Court "may appropriately decide whether the military followed [its] procedures[.]" *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993); *see also Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). Moreover, while it may not "reweigh[] the evidence" before the BCNR, *see Heisig*, 719 F.2d at 1157, the Court may consider whether the Board's decision "was based on a

---

[10] There is no reason to address which of the Board's decisions triggered the statute of limitations. *See Chambers*, 417 F.3d at 1227 (statute of limitations runs from the date when "the first competent board *finally* denie[s] [plaintiff's] claim.") (emphasis added); *Friedman*, 310 F.2d at 396 (noting the factors informing whether a Board decision should be considered "final").

[11] Because I conclude Mr. Strahler has not shown that he is eligible for medical retirement, his claim for CRSC must fail as well. *See* 10 U.S.C. § 1413a(c) (providing that CRSC is only available to members eligible for retired pay); AR 1018, 1128.

consideration of the relevant factors," *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)), and was "supported by substantial evidence," *Heisig*, 719 F.2d at 1157; *see also Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (stating that courts "may not substitute [their] judgment for that of [the agency]," but instead look to ensure the agency engaged in a reasonable decision-making process).

To be supported by "substantial evidence," the Board's decision must be based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the BCNR complied with the necessary procedures and reached a decision rationally supported by substantial evidence, it must be upheld. *Stine v. United States*, 92 Fed. Cl. 776, 791 (2010), *aff'd*, 417 F. App'x 979 (Fed. Cir. 2011). To refute the BCNR's decision, a plaintiff's evidence must be "cogent and clearly convincing[.]" *Stuart v. United States*, 123 Fed. Cl. 413, 421 (2015) (quoting *Arens v. United States*, 969 F.2d 1034, 1037 (Fed. Cir. 1992)); *Six v. United States*, 79 Fed. Cl. 581, 588 (2007).

## B. Substance

Medical retirement, as explained above, is governed by 10 U.S.C. § 1201, which requires (in relevant part) that a disability (1) render a service member "unfit to perform the duties of [his] office, grade, rank, or rating" and (2) be "of a permanent nature and stable." 10 U.S.C. § 1201(a), (b)(1). The principal substantive question is whether the BCNR's conclusion that Mr. Strahler was fit for duty at the time of discharge was supported by substantial evidence and not arbitrary, capricious or contrary to law. I conclude that within the narrow scope of review, the BCNR's decision was sound.

The BCNR found "credible" Dr. VanHook's statement that Mr. Strahler was fit for duty at the time of discharge. AR 1022. The record supports that conclusion. Although Mr. Strahler mentioned various complaints to Dr. VanHook before being discharged, the medical evaluations in the record found he was normal — with the exception of his spine MRI, discussed below. AR 754–56. Nothing in the record at the time of discharge contradicts Dr. VanHook's report of Mr. Strahler's normal tests, or that Mr. Strahler ultimately disclaimed conditions that he originally reported. AR 457–58. Even if Mr. Strahler did *not* in fact mean to disclaim his conditions, the record contains no contemporaneous medical evidence that he in fact suffered from anything other than a bulging disc, much less that any other conditions were disabling. Especially in the absence of contrary evidence, the BCNR was entitled to rely on the report of a military doctor. *See Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir.

1988) ("[I]t would be singularly inappropriate to second-guess the judgment of … military medical officers[.]"); *see also O'Brien v. United States*, 120 Fed. Cl. 85, 93 (explaining that the Court "will not substitute its judgment for that of either the military review board or the decisions made by qualified medical evaluators").

Mr. Strahler raises several substantive arguments in response. First, he argues that Dr. VanHook's views should be discounted. For example, he characterizes Dr. VanHook's statement that Mr. Strahler disclaimed medical complaints as uncorroborated hearsay. Pl.'s MJAR at 10. Even if that were true, it is not clear why Mr. Strahler thinks the point benefits him: The purported record evidence that Mr. Strahler actually suffered from disabling conditions at the time of discharge, including his statements recorded by Dr. VanHook, is all hearsay too. *See Richardson*, 402 at 407–08; *Schaefer v. United States*, 633 F.2d 945, 952 (Ct. Cl. 1980); Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."). If Mr. Strahler's approach were the law, he could not have carried his burden of proof before the BCNR or this Court. *Cf. Boyer v. United States*, 81 Fed. Cl. 188, 196 (2008), *aff'd*, 323 F. App'x 917 (Fed. Cir. 2009); *Stuart*, 123 Fed. Cl. at 421.

More fundamentally, this Court's review of the BCNR decision in light of the record is not bound by ordinary hearsay rules. Although this Court follows the Federal Rules of Evidence, *see* 28 U.S.C. § 2503(b), its review of *agency* decisions follows the Administrative Procedure Act. "[I]t has long been settled that the technical rules for the exclusion of evidence applicable in jury trials do not apply to proceedings before federal administrative agencies in the absence of a statutory requirement that such rules are to be observed," *New Dynamics Found. v. United States*, 70 Fed. Cl. 782, 797 (2006) (quoting *Opp Cotton Mills, Inc. v. Admin. of Wage & Hour Div. of Dept. of Labor*, 312 U.S. 126, 155 (1941)), and Plaintiff does not identify any such requirement here. After an agency decides to consider a given piece of information, what matters is not whether it is technically hearsay, but whether it "amounts to substantial evidence," a question this Court answers using "the same standard applied to all other evidence properly before an administrative agency," *Schaefer*, 633 F.2d at 952 — that is, whether "to a reasonable mind[] the circumstances are such as to lend it credence." *Hatmaker v. United States*, 127 Fed. Cl. 217, 226 (2016) (quoting *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1364 (Fed. Cir. 1998)). "Once held admissible [by the agency], … evidence is under no special disadvantage because of its hearsay character." *Schaefer*, 633 F.2d at 952.

Viewed by that standard, Dr. VanHook's records are substantial evidence that Mr. Strahler was fit. The record shows that Dr. VanHook placed Mr. Strahler on

limited duty and referred him to specialists for evaluation and testing. AR 37, 841. The resulting medical records — including records prepared by doctors other than Dr. VanHook — do not show that Mr. Strahler suffered from any condition other than a bulging disc, which Dr. VanHook discounted in writing. AR 458. Likewise, whatever peculiarities there may be in Dr. VanHook's approach, even Mr. Strahler does not claim in this case that he was disabled by most of the conditions in Dr. VanHook's original report, *i.e.*, dyspepsia, breathing problems, hemorrhoids, and so forth. *Id*. Dr. VanHook's statements that Mr. Strahler appeared fit for duty and disclaimed most of his complaints thus appears consistent with the contemporaneous medical record and Mr. Strahler's subsequent claims.

Mr. Strahler similarly argues that Dr. VanHook's report is not substantial evidence because Dr. VanHook failed to follow certain procedural requirements. Compl. ¶¶ 17–21; Pl's. MJAR at 9; Pl.'s Reply at 3–7. Those issues, as discussed below, are harmless error at worst. Besides, Dr. VanHook's notes also provide the record's only pre-discharge corroboration for Mr. Strahler's own claims that he suffered from disabling conditions in the first place. If they should be disregarded for procedural reasons, Mr. Strahler cannot carry his burden. Mr. Strahler gives no reason why *he* should get the entire benefit of any procedural deficiencies. Mr. Strahler next objects that he did not have access to some of his medical records at the time of discharge. *Id*. at 10–11. Even if so, that casts no doubt on the truth of Dr. VanHook's records, especially considering that Mr. Strahler later obtained those records and has had an opportunity — here and before the BCNR — to develop contrary medical evidence.

Second, Mr. Strahler emphasizes the back conditions that led to his discharge from the IRR in 2003 and contributed to his VA disability. Compl. ¶22; Pl.'s MJAR at 12–13; Pl.'s Reply at 8–9. But Dr. VanHook's view at the time of discharge was that the abnormality noted on Mr. Strahler's MRI did not line up with the symptoms he complained of, AR 458, and Mr. Strahler has not pointed to any record evidence to the contrary. In addition, as the BCNR noted, conditions that developed or worsened after Mr. Strahler's service do not bear on medical retirement under 10 U.S.C. § 1201. AR 1017; *see Kirwin v. United States*, 23 Cl. Ct. 497, 507 (1991) (holding that plaintiff's temporary disability between 1982–83 "is irrelevant to the question of … fitness for duty at the time of discharge in 1978"). Although Mr. Strahler transferred to the IRR after his discharge, AR 20, there is no evidence in the record that he suffered from back pain for roughly another nine months. AR 24. Even then, Mr. Strahler's diagnosis changed from a bulging disc to a herniated disc between 2002 and 2003. *Compare* AR 755, *with* AR 415. The record thus contains substantial evidence that Mr. Strahler's back condition changed between 2002 and 2003, rather than that he was unfit in 2002. The BCNR perhaps *could* have concluded that medical

evidence from 2003 implied that Mr. Strahler was also unfit in 2002, but it was also entitled to draw the opposite conclusion.

The same is true of the VA evaluations of Mr. Strahler's back condition. The BCNR considered the VA evaluation in the context of the whole record, as it was required to do, *see Bosch v. United States*, 27 Fed. Cl. 250, 265 (1992) (citing *Bennett v. United States*, 200 Ct. Cl. 635, 644 (1972)), but reasonably determined that it did not outweigh other evidence of Mr. Strahler's condition in 2002. In any event, while the Navy follows the *percentages* the VA attaches to disabilities, a VA rating does not control the question of whether Mr. Strahler was *unfit*. "Disability rating determinations by the Navy are 'designed to determine unfitness to perform the duties of office …. In contrast, the VA determines disability ratings based upon an evaluation of whether and how an individual's capacity to perform in the civilian world is diminished by a disability.'" *Lewis v. United States*, 476 F. App'x 240, 245 (Fed. Cir. 2012) (alterations in original) (quoting *Champagne v. United States*, 35 Fed. Cl. 198, 211–12 (1996)). The Federal Circuit rejected a nearly identical argument in *Heisig*: "[T]he fact of a 40 percent disability rating under the Veterans Administration's standards did not mandate a similar finding under service standards, but was evidence to be, and which was, considered along with all other evidence." 719 F.2d at 1157.

Third, Mr. Strahler argues that the BCNR's decision fails to account for other possibly unfitting conditions Mr. Strahler may have had, including paranoia and conditions resulting from chemical weapon exposure. Pl's. MJAR at 11, 15. Yet Mr. Strahler provides no medical evidence that he suffers from any such conditions, much less "cogent and clearly convincing evidence" that he suffered from them at the time of his discharge. *Stuart*, 123 Fed. Cl. at 421. At most, Dr. VanHook characterized Mr. Strahler's demeanor as "paranoid," AR 457, but the record gives no reason to construe that as a formal diagnosis.[12] No such diagnosis appears anywhere else in the record either. As for chemical weapon exposure, Mr. Strahler presents nothing more than speculation, *e.g.*, "[i]t is possible that Mr. Strahler's complaints were caused by chemical exposure and that may have also caused mental problems." Pl's. MJAR at 15. Without substantiation, that does nothing to undermine the evidence that Mr. Strahler was in fact fit for duty.

I have considered all the evidence in the record, as substantial-evidence review requires. *See Dixon v. Dep't of Transp., F.A.A.*, 8 F.3d 798, 804 (Fed. Cir. 1993)

---

[12] The record in fact suggests the opposite interpretation. Although hard to interpret with certainty, another note by Dr. VanHook suggests that he ruled out diagnosing a personality disorder with paranoid and antisocial traits. AR 455.

("Because the substantiality of evidence must take into account whatever in the record fairly detracts from its weight, we must canvass the entire record.") (quoting *Spurlock v. Dep't of Justice*, 894 F.2d 1328, 1330 (Fed. Cir. 1990) (quotes and alteration omitted))); *Heisig*, 719 F.2d at 1157 ("Under the substantial evidence rule, *all* of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion."). Viewed in light of the entire record, substantial evidence supports the BCNR's conclusion that Mr. Strahler was fit for duty at the time of discharge.

## C. Procedure

Mr. Strahler also objects that his discharge without medical retirement was procedurally improper in various ways. Those arguments fail as well.

The issue before the Court is not whether Mr. Strahler's discharge was procedurally sound in every respect, but whether to uphold the BCNR's determination that he was fit for duty and therefore ineligible for medical retirement. While this Court "may appropriately decide whether the military followed [its] procedures," *Murphy*, 993 F.2d at 873, it also applies the rule of harmless error. *See Wagner v. United States*, 365 F.3d 1358, 1361 (Fed. Cir. 2004) ("[S]trict compliance with procedural requirements is not required where the error is deemed harmless."); 5 U.S.C. § 706(2). The BCNR, moreover, is empowered to make determinations of fitness in the first instance, even if additional medical processing at the time of discharge might have been appropriate. *O'Hare*, 155 Fed. Cl. at 378; *Sawyer*, 930 F.2d at 1581 ("[I]n disability cases either the review boards or the correction board is competent to make a disability determination in the first instance."); *Patterson v. United States*, 44 Fed. Cl. 468, 471 (1999), *aff'd*, 250 F.3d 757 (Fed. Cir. 2000) (table).

Those principles resolve Mr. Strahler's procedural claims. Given the BCNR's conclusion that he was fit for duty at the time of discharge, it does not matter whether Dr. VanHook was required to report suspected malingering, Pls.' MJAR at 9, whether he actually would have been able to hold Mr. Strahler in temporary limited duty past the end of his service obligation, *id.* at 11, whether Mr. Strahler could have been returned to active duty at the end of temporary limited duty without approval, *id.* at 12, or whether he should have received a post-deployment health assessment or DES processing, *id.* at 3–4, 12. None of those supposed errors bear on Mr. Strahler's fitness, nor do they cast doubt on the BCNR's decision that he was fit. Given the pre-discharge medical evaluations that Mr. Strahler in fact received — and the substantial evidence supporting the BCNR's finding of fitness — it is also irrelevant whether other medical evaluations were omitted. *See Ferrell v. United States*, 23 Cl.

Ct. 562, 568 (1991) (explaining that failure to provide a PEB is harmless "unless it can be shown that the purpose behind [DES processing] went unfulfilled").

In short, even if Mr. Strahler's discharge involved procedural errors, he still would not be entitled to relief. All the procedural issues Mr. Strahler raises are therefore harmless.[13]

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Administrative Record is **GRANTED** and Mr. Strahler's Cross-Motion is **DENIED**. The case is **DISMISSED**.

The Clerk is directed to enter judgment accordingly.


**IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge

---

[13] Besides, most of the alleged procedural irregularities may not have been errors at all. For example, the regulation Mr. Strahler cites for Dr. VanHook's supposed duty to report malingering applies to daily excuses from active duty, but it is not clear whether it applies to Mr. Strahler's situation. MANMED Art. 23-52 (Dec. 8, 1987). The record has no contemporaneous evidence that Mr. Strahler ever objected to the length of his temporary limited duty, and he *consented* to being removed from limited duty, affirming by signature a finding that he was "found fit for full duty." AR 38. The requirement for approval before return to active duty did not go into effect until after Mr. Strahler's discharge; at the relevant time, it permitted Dr. VanHook to return him to active duty. MANMED Art. 18-29(3)(f). Because any errors were harmless, I need not resolve those questions.